**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CASSANDRA MYOSHI STITH, | ) | CASE NO. 1:20-CV-02312 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff Cassandra Myoshi Stith (Plaintiff), challenges the final decision of Defendant

Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her

applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (Act).

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned

United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a

Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends

that the Commissioner's final decision be REVERSED and REMANDED for proceedings

consistent with this opinion.

**I. Procedural History**

Plaintiff filed her applications for DIB and SSI on July 26, 2018, alleging a disability onset

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

date of September 10, 2013.[2] (R. 9, Transcript (Tr.) 184-199). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 133-151). Plaintiff participated in the hearing on October 21, 2019, was represented by counsel, and testified. (Tr. 35-57). A vocational expert (VE) also participated and testified. *Id*. On October 31, 2019, the ALJ found Plaintiff not disabled. (Tr. 30). The Appeals Council denied Plaintiff's request to review the ALJ's decision on August 12, 2022, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3).

Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 11 & 12). Plaintiff asserts the following assignments of error: (1) the ALJ erred by adopting a prior residual functional capacity (RFC) assessment[3] and failing to consider the opinion of a nurse practitioner; (2) the ALJ erred by failing to consider the impact of Plaintiff's combined impairments on the RFC; and (3) the credibility analysis violated Social Security Ruling (SSR) 16-3p. (R. 10, PageID# 819-831).

## II. Evidence

### A. Relevant Medical Evidence[4]

#### 1. Treatment Records

On January 8, 2014, Melanie Muller, LSW, completed an adult diagnostic assessment

---

[2]  On April 4, 2018, another ALJ issued a decision denying Plaintiff's prior application for DIB and SSI alleging the same onset date (Tr. 61-73).

[3]  A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a).

[4]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the Plaintiff in her brief and any other portions of the record deemed relevant by the court to the assignments of error raised.

noting Plaintiff reported feeling anxious, depressed, and angry after losing her job of seven years and a family member being assaulted. (Tr. 348-356).

On February 13, 2014, Plaintiff underwent an initial psychiatric evaluation with Sylvester Smarty, M.D., who diagnosed recurrent depression and PTSD (post-traumatic stress disorder). (Tr. 366-369). On mental status examination, Plaintiff had normal speech, no delusions, no suicidal/homicidal intent, logical thought process, a normal but depressed mood, full affect cooperative behavior, and good insight/judgment. (Tr. 367-368).

On October 23, 2018, Plaintiff saw Cosette Ghanem, LPC, and was anxious and depressed, but was gaining insight. (Tr. 512). Physical activities helped her with anxiety, and she reported a stress induced seizure and panic attacks due to the recent passing of her father. *Id*.

On October 25, 2018, Plaintiff reported daily panic attacks including one while at the office, but was able to "break through it." (Tr. 532). She reported feeling overwhelmed making funeral arrangements for her father. *Id*.

On January 14, 2019, Plaintiff saw neurologist Norton A. Winer, M.D. for complaints of migraines and memory loss.(Tr. 607). Her physical examination was unremarkable. (Tr. 609-610). Dr. Winter noted normal a neurological exam without any focal findings, but Plaintiff had mild bilateral carpal tunnel syndrome and it was "apparent that she does have migraines which can be exacerbated by her underlying hypertension, panic attacks, depression, etc." (Tr. 610).

Plaintiff told Dr. Winer, on February 25, 2019, that Verapamil helped decrease the frequency and severity of her headaches. (Tr. 616).

On April 26, 2019, Plaintiff saw LPC Ghanem who noted she had an irritable and angry mood/affect. (Tr. 687-688).

**2.   Medical and Non-Medical Opinions Concerning Plaintiff's Functional Limitations**

On September 15, 2018, State Agency physician Lynne Torello, M.D., completed a physical RFC assessment and opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand/walk for six hours and sit for six hours each in an eight-hour workday, never climb ladders/ropes/scaffolds, and frequently climb ramps/stairs. (Tr. 88-89). The limitations stemmed from Plaintiff's hypertension and obesity. *Id*. Dr. Torello indicated she was adopting the ALJ's physical RFC from April 4, 2018 pursuant to Acquiescence Ruling (AR) 98-4 (*Drummond* ruling). (Tr. 89).

On September 17, 2018, State Agency psychologist Sandra Banks, Ph.D., completed a mental RFC assessment indicating that she was adopting the ALJ's mental RFC from April 4, 2018 pursuant to Acquiescence Ruling (AR) 98-4 (*Drummond* ruling). (Tr. 89-90). That RFC limited Plaintiff to simple, routine tasks with no strict time demands, no strict production quotas, no more than occasional decision-making requirements, no more than minimal or infrequent changes in the work setting, only occasional interaction with the public, coworkers, and supervisors. (Tr. 90).

On December 27, 2018, Leighanna Stephenson, APRN-CNP, PMHNP-BC, completed a Mental Medical Source Statement, indicating she had seen Plaintiff approximately every four weeks since September 25, 2018—three months earlier. (Tr. 562). She indicated Plaintiff had been treated with pharmacological management, which included Lexapro and Clonazepam, and individual/group therapy. *Id*. When asked to set forth the clinical findings that support the severity of the assessed mental impairments, nurse Stephenson indicated "Petitioner displays daily anxiety w/ panic attacks that cause chest pain, feelings of impending doom, racing thoughts that make her unable to concentrate or care for [illegible] at times." *Id*. She checked boxes

4

indicating that Plaintiff was unable to meet competitive standards with respect to working in coordination with or proximity to others, completing a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 563-564). Nurse Stephenson also opined Plaintiff was "seriously limited" in eleven other areas.[5] *Id.* She anticipated that Plaintiff would miss three to four days of work per week due to her impairments or treatment, and that she would be off-task more than 75 percent of the workday. (Tr. 564).

On January 5, 2019, State Agency physician Gary Hinzman, M.D., completed a physical RFC assessment and indicated he was adopting the ALJ's physical RFC from April 4, 2018, pursuant to Acquiescence Ruling (AR) 98-4 (*Drummond* ruling). (Tr. 114-115).

On January 9, 2019, State Agency psychologist Carl Tischler, Ph.D., completed a mental RFC assessment indicating that he was adopting the ALJ's mental RFC from April 4, 2018 pursuant to Acquiescence Ruling (AR) 98-4 (*Drummond* ruling). (Tr. 126-127).

On October 4, 2019, Plaintiff's sister, Antoinette Warner, completed a Third-Party Function Report, indicating she sees Plaintiff multiple times per month and speaks to her daily on the telephone. (Tr. 283-290). According to Ms. Warner, Plaintiff had always been anxious and worried unnecessarily about the smallest things. (Tr. 283). She indicated Plaintiff cared for three children, a dog, and performed all household chores and responsibilities. (Tr. 284-285). Her anxiety sometimes caused conversations to escalate; she could walk a mile before needing to rest. (Tr. 288). She believed Plaintiff did not handle stress or changes in routine well. (Tr. 289).

---

[5] The form defines "seriously limited" as "the ability to function in this area is less than satisfactory, but not precluded in all circumstances. Individual would be limited in their ability to perform activity 15% of the time." (Tr. 563).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since April 5, 2018, the beginning of the unadjudicated period (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder, anxiety disorder with history of panic and post-traumatic stress disorder, migraine, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except for no climbing of ladders, ropes or scaffolds; frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no exposure to strong vibration, high background noise, industrial lighting or hazards (heights, machinery, commercial driving), as in a factory setting; and mental limitation that she perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation or confrontation), and no interaction with the general public as a job requirement (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ***, 1981 and was 36 years old, which is defined as a younger individual age 18-49, on April 5, 2018 (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-20, 22, 28-29).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. *Res Judicata* and the Opinion of Nurse Stephenson**

In the first assignment of error, Plaintiff combines two arguments regrading *res judicata* and Plaintiff's RFC, and the ALJ's consideration of a nurse practitioner's opinions. Although Plaintiff combines such arguments, they raise distinct issues and the court addresses them separately below—finding that the first issue lacks merit whereas the second issue leads the undersigned to recommend reversing the Commissioner's final decision and remanding this matter for further proceedings.

**a. *Res Judicata* and the ALJ's RFC Finding**

On May 5, 2015, Plaintiff filed prior applications for DIB and SSI; those applications were denied, after a hearing, in an administrative law judge's unfavorable decision issued on April 4, 2018. (Tr. 15). On July 26, 2018, Plaintiff filed the subsequent applications for DIB and SSI at issue in this case, alleging a disability onset date of September 10, 2013. (Tr. 184-199). A second ALJ decision—the decision under review here—considered whether the "*Drummond* rule" and *res judicata* should apply. The ALJ decided as follows:

> Upon careful consideration of the medical evidence, the undersigned find [sic] that new and material evidence was submitted regarding the claimant's impairments after the prior administrative law judge's decision dated April 4, 2018 (B1A). Similarly, the undersigned finds new and material evidence with regard to the claimant's age, education, and/or past work (B1A). Accordingly, the undersigned finds that principles in *Drummond* and *Dennard* do not apply.

(Tr. 16).

The essence of Plaintiff's argument is that the ALJ erred because the RFC in the current decision and earlier decision are "primarily the same." (R. 10, PageID# 820). Although Plaintiff claims the ALJ actually "adopted the prior RFC" she concedes that the ALJ included additional limitations. (R. 10, PageID# 820). Consequently, it is questionable whether Plaintiff has identified any basis for remand.

At issue in this case is the application of the Acquiescence Ruling 98-4(6), based on the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (1997), *res judicata* in the social security context, and the impact of the Sixth Circuit's subsequent decision in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). One district court has clearly and succinctly summarized them issues as follows:

> As an initial matter, I will address the issue of res judicata and the effect of the Sixth Circuit decision's in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).
>
> About twenty years ago, the Sixth Circuit held that the "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (1997). The Social Security Administration then issued an Acquiescence Ruling on *Drummond*:
>
>> When adjudicating a subsequent disability claim with an adjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim ... unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.
>
> [AR] 98-4(6), 1998 WL 283902 (June 1, 1998).
>
> Recently, however, the Sixth Circuit clarified the meaning of *Drummond*. In *Earley*, a Social Security Administration ALJ had thought *Drummond* precluded him from revisiting an earlier finding that the claimant was not disabled unless she offered new and material evidence of a changed condition. *Earley*, 893 F.3d at

931. But "[t]hat is not how it works." *Id*. at 932. Rather, the Sixth Circuit explained, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory condition." *Id*.

*Colbert o/b/o JVR v. Comm'r of Soc. Sec.*, No. 2:18-CV-11050, 2019 WL 3315734, at *10 (E.D. Mich. Mar. 27, 2019), *report and recommendation adopted*, 2019 WL 2559803 (E.D. Mich. June 21, 2019).

Typically, the *res judicata* issue arises when a claimant's application is either approved or disapproved and claimant then files a subsequent application for a new time period *subsequent to* the earlier decision. Courts in this district have generally observed that "[t]he *Earley* court held that *res judicata* does **not** apply to a prior ALJ's findings **when a different time-period is at issue**, and that therefore, the **prior findings are not binding**." *See, e.g.*, *Al Jalham v. Comm'r of Soc. Sec.*, No. 18-12595, 2019 WL 7584406, at *4 (E.D. Mich. Aug. 26, 2019) (emphasis added), *report and recommendation adopted* 2019 WL 5558357 (E.D. Mich. Oct. 29, 2019); *see also Forman v. Saul*, No. 7:19-CV-043-CHB, 2020 WL 5521038, at *5 (E.D. Ky. Sept. 14, 2020) ("res judicata does not apply to a new application for SSI benefits for a new period of time; rather, the new application is entitled to a "fresh review.") (*citing Earley*, 893 F.3d at 933-34); *Snead v. Saul*, No. 1:19CV2754, 2020 WL 5097580, at *11 (N.D. Ohio Aug. 10, 2020) (In *Earley*, the Sixth Circuit clarified *res judicata* applies to subsequent applications for ""the same period of time [ ] rejected by the first application.""), *report and recommendation adopted*, 2020 WL 5096066 (N.D. Ohio Aug. 28, 2020); *Neupane v. Comm'r of Soc. Sec.*, No. 2:20-CV-2306, 2021 WL 3489676, at *6 (S.D. Ohio Aug. 9, 2021) ("res judicata does not apply to a new application for SSI benefits for a new period of time.").

Here, the ALJ declined to reopen the period between September 10, 2013, and April 4,

2018—the date of the previous unfavorable decision. (Tr. 15). Plaintiff points out that the alleged onset date, at issue in this case, preceded that first ALJ decision (R. 10, PageID# 821). However, neither Plaintiff's initial brief nor the reply contains any legal argument suggesting that the ALJ's decision to deny a reopening of the prior period constituted reversible error. Rather, Plaintiff merely asserts that because "[t]his matter did not involve a new period of alleged disability, so *Earley* should not apply." (R. 10, PageID# 821). First, Plaintiff is incorrect. The ALJ was clearly only considering the period after the previous decision. Second, it is unclear why Plaintiff takes issue with the two RFCs being similar if she believes no new time period is implicated. Finally, Plaintiff cites no authority suggesting that an ALJ, who declines to adopt a prior RFC based on *res judicata* grounds, is precluded from adopting a similar RFC after considering the new and material evidence in the record. Instead, Plaintiff's brief contends that if the ALJ considered new and material evidence, "the ALJ erred when he evaluated the opinion of the treating nurse practitioner [Stephenson]." (R. 10, PageID# 821). That argument is addressed below.

Plaintiff's argument surrounding the issue of *res judicata*, however, fails to identify any basis for remand.

### b. Nurse Stephenson

As recounted above, nurse Stephenson completed a Mental Assessment on December 27, 2018. (Tr. 562-565). Plaintiff asserts that Stephenson's opinion "was supported by treatment notes from Signature Health" and proceeds to highlight evidence that, in Plaintiff's lay opinion, supports the limitations assessed by nurse Stephenson. (R. 10, PageID# 823).

A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a

claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App's 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician.")

To the extent Plaintiff is asking the court to reweigh the evidence *de novo,* including the medical opinions and prior administrative findings of record, and arrive at its own RFC determination, such an invitation exceeds the scope of this judicial review. The court can only review whether the ALJ's decision was supported by substantial evidence. The Sixth Circuit, in an analogous case, has stated:

> [The plaintiff] additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Plaintiff applied for social security benefits on July 26, 2018. (Tr. 184-199). Therefore, the former "treating physician rule" no longer applies, as it was eliminated by a change in social security regulations applicable to all claims filed after March 27, 2017. Indeed, the regulations

no longer use the term "treating source," instead utilizing the phrase "your medical source(s)." 20 C.F.R. § 416.920c. Moreover, the change is not merely semantic, as the regulation explicitly states that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources."[6] *Id*. As explained by the SSA, "[c]ourts reviewing claims under [the old] rules … focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision…. [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).

The ALJ's decision recounted much of the mental health treatment Plaintiff received, including the three months of treatment from nurse Stephenson.[7] (Tr. 22-27). In addressing nurse Stephenson's opinion, as well as those of the State Agency psychologists, the ALJ's decision included an extensive assessment and found as follows:

> Treatment for the claimant's impairments continued. During her October 25, 2018 medication management session with Leighanna Stephenson, CNP, she described struggles dealing with recent deaths in her family as well as with daily panic attacks. Her mood was sad and tearful upon examination. She nonetheless was

---

[6] "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 416.913(a)(5) While the new regulations differentiate between "medical opinions" and "prior administrative medical findings," the regulations do not ascribe greater significance to either, and both and are evaluated utilizing the same factors. 20 C.F.R. § 416.920c(c).

[7] The revised regulations now designate "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice" as "acceptable medical sources" for claims filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7).

cooperative, easy to engage, and was able to maintain good eye contact. Additionally, while her attention and concentration were fair, her memory was intact to recent and remote events, and her thought process was organized, linear, and goal directed. Her treatment regimen, that then included Lexapro, melatonin, and Klonopin, was renewed (B6F/40-45). She reported she was overwhelmed by life stressors during her November 14, 2018 CPST session. Nonetheless, she remained engaging, friendly, and receptive (B6F/8-9). The claimant reported continued struggles with family stressors, but noted she recently took an out-of-state trip during her November 28, 2018 psychotherapy session. Clinical findings included a tearful, anxious, and depressed presentation. She nonetheless remained appropriately dressed/groomed and was open to insight (B6F/28-30). During her medication management evaluation on November 29, 2018, she reported symptoms that included daily crying spells, poor attention, distractibility, and problems focusing. Her mood/affect were sad and tearful upon examination, and her attention/concentration and insight/judgment were no more than fair. However, she remained cooperative, easy to engage, and was able to make good eye contact. Additionally her memory was intact for recent and remote events. Her treatment regimen was unchanged (B6F/46-51).

The evidence supports no sustained worsening in the signs and symptoms associated with her impairments. During her December 20, 2018 psychotherapy session, she described panic attacks, sleep disturbance, nightmares, and problems managing family stressors. Upon examination, she was anxious, frustrated, and angry with her family. However, she was appropriately groomed, expressive, and willing to gain insight (B13F/4-5). The claimant presented for a medication management evaluation with Ms. Stephenson on December 27, 2018. She described difficulty dealing with family stressors, noting crying spells, distractibility, panic attacks, and "feeling jittery." Clinical findings included a sad and tearful mood and affect as well as fair attention/concentration and insight/judgment. However, she remained cooperative, easy to engage, and was able to maintain good eye contact. Her thought process was organized, linear, and goal directed, and her memory was intact to recent and remote events. Further, she did not appear internally stimulated with abnormal/psychotic thoughts. Her prescription for melatonin was increased to help with sleep, but her treatment regimen was otherwise unchanged (B13F/12-17).

Ms. Stephenson completed a functional assessment for the claimant on December 27, 2018. She explained that she treated the claimant for her diagnoses of major depressive disorder with psychotic features and PTSD as of September 25, 2018. Associated clinical findings included anxiety with panic attacks that caused chest pain, feelings of impending doom, as well as racing thoughts that make it difficult to concentrate or care of activities of daily living, at times. In terms of her mental abilities and aptitudes for unskilled work, the claimant was unable to meet competitive standards for working in coordination with or proximity to others, as well as for completing a normal workday and workweek without interruptions

from psychologically based symptoms. Additionally, she was seriously limited, but not precluded, in areas that included remembering work-like procedures, maintaining attention for two-hour segments, sustaining an ordinary routine without special supervision, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, and for dealing with normal work stress. In terms of her mental abilities and aptitudes for semi-skilled and skilled work, she was seriously limited, but not precluded, from understanding, remembering, and carrying out detailed instructions as well as for dealing with stress of semi-skilled and skilled work. With regard to her mental abilities and aptitudes needed to do particular types of jobs, she was seriously limited, but not precluded, from traveling in an unfamiliar place and with using public transportation. She could be expected to be absent from work three to four days per week due to her impairments and related treatment, and the symptoms of her impairments would result in her being off task greater than 75 percent of an eight-hour day.

*** 

The signs and symptoms associated with the claimant's impairments remained stable overall with treatment. During her April 25, 2019 medication management evaluation, her mood was anxious and tearful. However, she was cooperative, pleasant, and displayed good grooming and hygiene. While her attention and concentration were noted to be fair, Ms. Stephenson also indicated that the claimant was no[t] distractible. Additionally, the claimant's thought process was linear and goal directed, and her memory was intact to recent and remote events. Trazodone was added to her treatment regimen to help with sleep (B13F/134-139). On June 24, 2019, she reported she continued to have trouble with sleep. However, she exhibited an appropriate affect, good hygiene and eye contact, as well as a cooperative attitude (B13F/88-91). Finally, on August 9, 2019, described continued anxiety, to include social anxiety. She presented as tearful upon examination, but her hygiene and eye contact remained good (B13F/109-113).

*** Additionally, she received psychotherapy, medication management, and CPST support for psychological symptoms that included difficulty managing family stressors, anxiety, past trauma, panic attacks, crying spells, poor attention, distractibility, problems focusing, sleep disturbance, memory deficits, and nightmares (B6F/46-51, B4F/86, B4F/126-128, B6F/4-5, B4F/135-137, B6F/40-45, B11F/5, B12F/1-5, B13F/4-5, B13F/12-17). Related clinical findings included tearfulness, an anxious, depressed, frustrated, irritable, or angry mood and/or affect, decreased energy, fair attention and concentration, fair insight and judgment (B4F/111-113, B4F/126-128, B4F/135-137, B6F/4-5, B6F/28-30, B6F/40-45, B6F/46-51, B13F/4-5, B13F/12-17, B13F/18-22, B13F/109-113, B13F/134-139).

*** There is no evidence of the need for acute or inpatient treatment of her

psychological signs and symptoms. She was noted to be pleasant, cooperative, and able to maintain appropriate eye contact upon examination (B4F/64-69, B4F/70-75, B4F/76-81, B4F/111-113, B4F/126-128, B6F/4-5, B6F/40-45, B6F/46-51, B13F/12-17, B13F/58-62, B13F/88-91, B13F/134-139). The record contains findings of intact memory, normal/adequate attention and concentration, as well as an organized, linear, and goal directed thought process (B4F/64-69, B4F/70-75, B4F/76-81, B6F/40-45, B6F/46-51, B12F/1-5, B13F/12-17, B13F/134-139). Further, treatment notes reflects that she consistently exhibited appropriate grooming/hygiene and contains findings of a normal/appropriate mood and/or affect (B4F/64-69, B4F/70-75, B4F/76-81, B4F/111-113, B4F/126-128, B4F/135-137, B6F/28-30, B13F/4-5, B13F/18-22, B13F/58-62, B13F/88-91, B13F/109-113, B13F/134-139).

***

The State agency psychological consultants, Sandra Banks, PhD and Carl Tishler, PhD, assessed that the claimant retained the ability to perform simple, routine tasks with no strict time demands, no strict production quotas, no more than occasional decision-making requirements, no more than minimal or infrequent changes, and only occasional interaction with the public, coworkers, and supervisors (B2A, B3A, B6A, B7A). Such a finding is consistent with findings of her depressed, anxious and anxious mood, reported panic attacks, as well as findings of only fair attention and concentration. However, to account for findings of a frustrated/angry mood and affect as well as tearfulness, she should have no interaction with the general public as a job requirement (B4F/111-113, B4F/126-128, B4F/135-137, B6F/4-5, B6F/28-30, B6F/40-45, B6F/46-51, B13F/4-5, B13F/12-17, B13F/18-22, B13F/109-113, B13F/134-139). Nonetheless, a greater level of limitation is not consistent with findings that include intact memory, normal/adequate attention and concentration, an organized, linear, and goal directed thought process, appropriate grooming/hygiene, as well as findings of a normal/appropriate mood and/or affect (B4F/64-69, B4F/70-75, B4F/76-81, B4F/111-113, B4F/126-128, B4F/135-137, B6F/28-30, B13F/4-5, B13F/18-22, B13F/58-62, B13F/88-91, B13F/109-113, B13F/134-139). For these reasons, the undersigned finds the assessment of Ms. Stephenson to be unpersuasive and rejects the level of limitation alleged as it is unsupported by the previously summarized findings.

(Tr. 24-25, 26, 27).

Plaintiff's reply contends the ALJ "failed to provide any good reasons" for finding nurse Stephenson's opinions unpersuasive. (R. 12, PageID# 854). Although that is no longer the standard, the new regulations are not devoid of any requirements relating to an ALJ's duty to

explain the weight assigned to medical opinions such as those from nurse Stephenson.

When evaluating medical opinions, the ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" in analyzing the opinion's persuasiveness. 20 C.F.R. § 416.920c(c)(1)-(5). Moreover, an ALJ is required to articulate how he or she considered the factors of "supportability" and "consistency," which are the two "most important factors" in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(a), (b) & (c).[8] "Supportability" is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). When explaining what is meant by "consistency," the revised regulations instruct an ALJ to consider "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2). The revised regulation further state, "We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id*.

The ALJ determined that nurse Stephenson's opinion was unpersuasive, suggesting the limitations she assessed were "not consistent with findings that include intact memory,

---

[8] The regulations also state, "The factors of supportability … and consistency … are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. § 416.920c(b)(2).

normal/adequate attention and concentration, an organized, linear, and goal directed thought process, appropriate grooming/hygiene, as well as findings of a normal/appropriate mood and/or affect." (Tr. 27). The ALJ's decision, however, does not expressly address the "supportability" factor, which, again, is among the two most important factors. Although it does purport to identify perceived inconsistencies between nurse Stephenson's opinion and treatment records, "consistency" and "supportability" require analysis of different portions of the administrative record. *See, e.g.*, 20 C.F.R. § 416.920c(b)(2); *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840, 2021 WL 2917562 (M.D. Fla. July 12, 2021) ("Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.")

While the ALJ may have intended to consider the supportability and consistency factors together, he only addresses consistency rendering the analysis insufficient. The ALJ's decision must build an accurate and logical bridge between the evidence and the ALJ's conclusion. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004). "Where the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Castello v. Commissioner of Social Sec.*, 5:09 CV 2569, 2011 U.S. Dist. LEXIS 13659, 2011 WL 610590, at *2 (N.D. Ohio Jan 10, 2011) (*quoting Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (internal quotation omitted); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (the ALJ's analysis must allow reviewing court to trace the path of her reasoning) (*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)).

In addition, the ALJ's reasoning is tantamount to rendering medical judgments. The

decision's reasoning, in other words, appears to be based on the unexplained assumption that an individual with records that, at times, indicate intact memory; normal or adequate attention and concentration; organized, linear, and goal directed thought process; and appropriate grooming/hygiene could not possibly be as limited as nurse Stephenson's opinion suggests. While on its face this may appear to be a reasonable judgment—this decision should not be read as rendering any determination regarding the overall persuasiveness of the opinion or Plaintiff's claims—neither the ALJ nor this court have the medical expertise to render such a medical judgment. Mental health impairments can be especially difficult to understand for those with no formal training and medical expertise in the field. Here, the ALJ's reasoning is based on unfounded assumptions. Earlier in the decision, the ALJ also emphasized that "[t]here is no evidence of the need for acute or inpatient treatment of her psychological signs and symptoms." (Tr. 26). Again, the decision appears to assume that an individual as limited as assessed by nurse Stephenson would require such treatment—another assumption without a supporting foundation in the decision. The decision further mentions a lack of change in Plaintiff's treatment regimen around the time of nurse Stephenson's treatment of Plaintiff (Tr. 24), and concludes Plaintiff's impairments "remained stable overall with treatment."[9] (Tr. 25). Treatment and medication decisions fall squarely into the medical judgment sphere and an ALJ may not impermissibly

---

[9]  Courts have observed that the fact that a social security claimant has been described as "stable" is of "rather limited utility in the disability context." *Kiefer v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 1976, 2014 WL 66717 at * 5 (N.D. Ohio Jan. 8, 2014) (White, M.J.); s*ee also Davisson v. Astrue*, 2011 U.S. Dist. LEXIS 64263, 2011 WL 2461883 at * 10 (N.D. Ohio June 17, 2011) ("A person can have a condition that is both 'stable' and disabling at the same time.") (citations omitted); *Hicks v. Comm'r of Social Sec.*, 2009 U.S. Dist. LEXIS 89481, 2009 WL 3127183 at * 3 (S.D. Ohio Sept. 28, 2009) ("Stable" is a medical term that simply means a condition is neither better nor worse); *Lechner v. Barnhart*, 321 F.Supp.2d 1015, 1030 (E.D. Wisc. 2004) ("One can be stable and yet disabled.").

displace a medical the doctor's opinion based on the ALJ's lay interpretation of the evidence.[10] In this case, no medical expert provided testimony during or after the administrative hearing, and the ALJ's decision lacks sufficient grounds for making the medical judgments underlying the decision's reasoning.

Although it is the ALJ's duty to assess the medical and non-medical evidence and render an RFC finding, it is apparent that a bright line is not always visible when carrying out this duty. But the explanation given by the ALJ for finding nurse Stephenson's opinion unpersuasive fails to provide a logical bridge for reviewing court's to follow, and strays too far into the zone of medical judgments.

Furthermore, under the revised regulations, evidence[11] from *other* medical sources—in this case State Agency psychologists[12] Dr. Banks and Tischler—are also pertinent when evaluating the "consistency" of nurse Stephenson's opinion. The regulations define consistency by

---

[10]  The case law is well-established that an ALJ may not substitute his or her personal interpretation of the evidence for those of trained medical professionals. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (citing *McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2d Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

[11]  Medical evidence—for claims filed after March 27, 2017—includes both "objective medical evidence" as well as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3) & 416.913(a)(3).

[12]  "Prior administrative findings" refers to the findings of the State Agency physicians or psychologists. 20 C.F.R. § 416.913(a)(5). The regulations differentiate between "medical opinions" and "prior administrative medical findings," but do *not* ascribe greater significance to either, and both are evaluated utilizing the same factors. 20 C.F.R. § 416.920c(c).

explaining that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). In many cases, it is conceivable that the ALJ's proper evaluation of the opinions contained in prior administrative medical finding, and corresponding decision to find such opinions persuasive, could render harmless the type of error identified herein.

In the case at bar, however, Drs. Banks and Tischler merely adopted the previous administrative law judge's mental RFC from April 4, 2018, pursuant to Acquiescence Ruling (AR) 98-4. (Tr. 89-90, 126-127). The second ALJ, however, as stated above, found there was "new and material evidence was submitted regarding the claimant's impairments after the prior administrative law judge's decision dated April 4, 2018" and declined to apply AR 98-4/*Drummond*. (Tr. 16). The ALJ, nonetheless, found the opinions of Drs. Banks and Tischler "consistent"—and presumably persuasive—despite those sources merely adopting an RFC from an earlier time period that the ALJ conceded was no longer reliable due to new and material evidence. (Tr. 27).

Given the lack of a clear and logical explanation for the persuasiveness of the sources of record, the court recommends remanding this matter for further proceedings.

**2. Remaining Assignments of Error**

Because this court recommends finding that a remand is necessary due to the underlying decision's lack of a sufficient explanation for finding the opinion of nurse Stephenson unpersuasive, Plaintiff's remaining arguments are not addressed in the interests of judicial economy. However, on remand, the ALJ will have further opportunity to elaborate upon the weight assigned to Plaintiff's testimony, the opinion of Plaintiff's sister, and whether Plaintiff's

migraine headaches satisfied or equaled a Listing.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 31, 2022


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.** ***See Berkshire v. Beauvais,*** **928 F. 3d 520, 530-31 (6th Cir. 2019).**